769 So.2d 1040 (2000)
Becky S. TORREY, etc., Petitioner,
v.
LEESBURG REGIONAL MEDICAL CENTER, et al., Respondents.
No. SC95841.
Supreme Court of Florida.
October 26, 2000.
Rehearing Denied January 5, 2001.
*1041 Roger E. Craig of Roger E. Craig & Associates, Naples, Florida, for Petitioner.
Larry D. Hall and William W. Large of Hill, Reis, Adams, Hall & Schieffelin, P.A., Orlando, Florida; Jeffrey S. Badgley, Rafael E. Martinez, and Ruth C. Osborne of McEwan, Martinez, Luff, Dukes & Ruffier, P.A., Orlando, Florida; and G. Franklin Bishop, III of Bussey, White, McDonough and Freeman, P.A., Orlando, Florida, for Respondents.
SHAW, J.
We have for review Torrey v. Leesburg Regional Medical Center, 731 So.2d 748 (Fla. 5th DCA 1999), which expressly and directly conflicts with Szteinbaum v. Kaes Inversiones y Valores, C.A., 476 So.2d 247 (Fla. 3d DCA 1985). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. This case asks us to determine whether a complaint filed and signed by an attorney not licensed to practice in Florida is a nullity or an amendable defect. We hold that it is the latter.
On September 16, 1997, Becky Torrey, personal representative of the estate of Helen Rose Woodard, filed a wrongful death complaint alleging medical malpractice against Leesburg Regional Medical Center and Drs. Kenneth Kupke and Robert Hux. The complaint alleged that Woodward died on October 3, 1995, from complications during the induction of anesthesia prior to surgery.
The complaint was prepared and signed by a Michigan attorney (plaintiff's attorney), not licensed to practice in Florida. The attorney also signed the notice of intent to file a medical malpractice claim required by section 766.106(2), Florida Statutes (1999). The notice of intent was dated February 7, 1997.
On November 4, 1997, defendant Kupke filed a motion to disqualify plaintiff's attorney pursuant to Florida Rule of Judicial Administration 2.060(b). However, the motion did not request dismissal of the complaint. Rule 2.060(b) provides:
(b) Foreign Attorneys. Attorneys of other states shall not engage in a general practice in Florida unless they are members of The Florida Bar in good standing. Upon verified motion filed with a court showing that an attorney is an active member in good standing of the bar of another state, attorneys of other states may be permitted to appear in particular cases in a Florida court. A motion for permission to appear shall be submitted with or before the attorney's initial personal appearance, motion, or pleading. The motion shall state all jurisdictions in which the attorney is an active member in good standing of the bar and shall state the number of cases in which the attorney has filed a motion for permission to appear in Florida in the preceding 3 years.
Plaintiff's attorney responded to the motion to disqualify on January 27, 1998, admitting that he was not licensed to practice in Florida but indicating that others at his firm were members of The Florida *1042 Bar. He requested that the court deny the motion to disqualify, or enter an order allowing him to appear on behalf of the plaintiff.
The court held a hearing on January 29, 1998, at the beginning of which the trial court approved the appearance of Florida counsel as co-counsel for the plaintiff. Thereafter, defendant Kupke argued for dismissal of the complaint, not disqualification of the plaintiff's attorney, maintaining that the complaint signed by the Michigan attorney was a nullity. This argument was adopted by all of the defendants but by this time the statute of limitations had expired on the plaintiffs medical malpractice claim.[1] The trial court, concerned with the harshness of a dismissal, asked plaintiff's attorney to submit evidence, if any, of excusable neglect.
In response, the attorney filed an affidavit stating that he prepared and signed the complaint under the belief the statute of limitations would expire on October 3, 1997, rather than January 5, 1998, given the tolling of the statute during the ninety-day presuit period.
The court dismissed the plaintiffs complaint without prejudice on June 22, 1998, relying on rule 2.060(b) and Lincoln American Life Insurance Co. v. Parris, 390 So.2d 148 (Fla. 1st DCA 1980). In Lincoln, the First District reversed a trial court's denial of a motion to set aside a default where the trial court treated the defendant's answer to the plaintiffs complaint as a nullity because it was signed by a lawyer not admitted to practice in Florida although others at his firm were so admitted. The First District held the lawyer's violation of rule 2.060(b) the product of excusable neglect, concluding that the attorney's misconduct was mitigated by the shortness of time available to the out-of-state defendant "to serve a timely answer, and by counsel's apparent intention to secure Florida counsel for further appearances." Id. at 149. In the instant case, the trial court emphasized that the plaintiff's attorney had not provided any evidence of excusable neglect as almost one year expired between the filing of the notice of intent to initiate litigation and the appearance of local counsel.
On appeal, the Fifth District affirmed the dismissal without prejudice, framing the issue as "whether a complaint filed by an attorney not authorized to practice law in Florida is a nullity and thus not correctable by amendment adding the name of an authorized lawyer, or ... merely an unauthorized filling that is validated upon entry into the case of a lawyer authorized to practice in this state." Torrey v. Leesburg Reg'l Med. Ctr., 731 So.2d 748, 748 (Fla. 5th DCA 1999). The Fifth District, rather than undertake the excusable neglect approach undertaken by the trial court under Lincoln, seemingly opted for a bright line rule in holding the complaint a "nullity not subject to correction." Id. at 749. In so holding, the court cited to the established rule that corporations must be represented by counsel. See Daytona Migi Corp. v. Daytona Automotive Fiberglass, Inc., 417 So.2d 272 (Fla. 5th DCA 1982) (holding a notice of appeal signed by a non-attorney corporate officer a nullity); Quinn v. Housing Auth. of Orlando, 385 So.2d 1167 (Fla. 5th DCA 1980) (reversing summary judgment in favor of corporate housing authority, holding its complaint signed and *1043 filed by a non-attorney void); Nicholson Supply Co. v. First Fed. Sav. & Loan Assoc., 184 So.2d 438 (Fla. 2nd DCA 1966) (affirming trial court's striking of plaintiff corporation's complaint holding the complaint a nullity where it was filed and signed by the corporation's non-attorney president).[2]

Lincoln's Excusable Neglect Approach
While at first glance the Fifth District's nullity holding may appear inapposite to the First District's excusable neglect approach, the different procedural postures of the cases appear to account for the seemingly incongruous treatment.
In Lincoln, as noted earlier, the First District heard an appeal from the denial of a motion to set aside a default. Under Florida Rule of Civil Procedure 1.540, a showing of excusable neglect is one of the grounds upon which an aggrieved party can be relieved from a default judgment. See Fla. R. Civ. P. 1.540(b).[3] In the present case, the Fifth District heard an appeal from the grant of a motion to dismiss to which a showing of excusable neglect or any of the other enumerated grounds under 1.540(b) would not appear relevant. This procedural distinction is further illustrated by the Fifth District's approach in Moreno Construction, Inc. v. Clancy & Theys Construction Co., 722 So.2d 976 (Fla. 5th DCA 1999). In Moreno the defendant corporation appealed from the trial court's denial of a motion to set aside a default final judgment entered after the trial court found that the corporation had filed no responsive pleading where its answer was filed by its non-attorney corporate president. The Fifth District reversed the trial court, finding excusable neglect where the corporate president indicated that he was not aware that a corporation required representation by counsel in circuit court and where the corporation immediately hired counsel once the trial court dispelled its erroneous belief. In so holding, the court noted:
In reaching this conclusion we have considered Florida's common law rule that pleadings filed by a non-lawyer on behalf of another are a nullity. The rule is the product of the policy against the unauthorized practice of law. However, under the facts of this case, to mechanically apply the rule to prohibit a finding of excusable neglect places form over substance and fails to serve the underlying policy. See Szteinbaum v. Kaes Inversiones y Valores, C.A., 476 So.2d 247 (Fla. 3d DCA 1985). In this case, Florida's policy that cases should be tried on their merits whenever possible prevails.
Moreno, 722 So.2d at 978.
The Third District's approach in Szteinbaum, however, cannot be similarly *1044 reconciled with the Fifth District's decision in the present case.

Szteinbaum
In Szteinbaum, the Third District addressed the question of "whether a complaint filed by a non-attorney on behalf of a corporation may be amended to cure this deficiency." Szteinbaum, 476 So.2d at 247. The plaintiff in Szteinbaum, a corporation, filed and served a complaint without the signature of an attorney. The defendant moved to dismiss the complaint and the trial court granted the motion with leave to amend. Thereafter, the corporate plaintiff filed an amended complaint signed by an attorney and served it by mail on the defendant's attorney. The defendant moved to dismiss the complaint contending that because the original complaint filed by a non-attorney was a nullity, personal service of the amended complaint was required. The trial court denied the motion.
On appeal, the Third District, citing the policy favoring the resolution of cases on the merits and the liberal rules governing the amendment of pleadings,[4] held the complaint defective but not a nullity and therefore correctable by amendment. Nevertheless, the Third District qualified this right to amend by borrowing from the excusable neglect approach pertinent to motions to set aside defaults:
As in the default cases, the decision of whether to dismiss a complaint without leave to amend should be controlled by considerations of the fault and diligence of the plaintiff corporation and the prejudice to the defendant as they appear in the individual case. In the present case, there is no indication that the errant complaint prejudiced the defendant in any way or that the plaintiff corporation acted with knowledge that it was improper for it, without counsel, to prepare and file the initial complaint. On the other hand, there is a strong indication that the plaintiff corporation acted with diligence in immediately obtaining counsel after being given leave to do so.
Szteinbaum, 476 So.2d at 252.
The respondents argue that the Szteinbaum approach can be distinguished and limited to the corporate setting because unlike a corporation, here the petitioner as a natural person could have signed the complaint herself. The policies guiding the Szteinbaum decision, however, are not susceptible to such a limitation.
The respondents further argue that allowing a complaint signed by an attorney not licensed to practice in the state to be amended would render the prohibition against the unauthorized practice of law meaningless. As noted by the Szteinbaum court, however, the nullity rule is ill-suited to promote the policy served by the rule against the unauthorized practice of law:
To be sure, the "protection of the public from incompetent, unethical, or irresponsible representation," through the prevention of the unauthorized practice of law is a compelling public policy. We suggest, however, that this latter policy is not served by a rule of law that declares that a complaint filed by a non-attorney on behalf of a corporation cannot be cured by the later appearance of counsel to represent the corporation and, moreover, that such a rule disserves the policy that cases should be decided on their merits.
Id. at 249-50 (citation omitted); see also Telepower Communications, Inc. v. LTI Vehicle Leasing Corp., 658 So.2d 1026 *1045 (Fla. 4th DCA 1995) (allowing the appellant corporation an opportunity to amend its notice of appeal signed by a non-attorney in accordance with Szteinbaum).
As emphasized by the Third District in Szteinbaum, the nullity rule truly places the burden on the unwary litigant, not the offending attorney: "Indeed, prohibiting amendment and dismissing as a nullity the complaint would yield the ironic result of prejudicing the constituents of the corporation, the very people sought to be protected by the rule against the unauthorized practice of law." Szteinbaum, 476 So.2d at 250. A similar observation was made by the Fourth District Appellate Court of Illinois in McEvers v. Stout, 218 Ill.App.3d 469, 161 Ill.Dec. 194, 578 N.E.2d 321 (1991). The McEvers court allowed the plaintiffs to amend their medical malpractice complaint after the expiration of the statute of limitations where the original complaint was dismissed as a nullity because it was filed by an attorney not licensed to practice in Illinois. The court concluded that the nullity rule exacted too harsh a penalty on litigants: "[W]e find the Fruin[[5]] rule provides a result that is too harsh.... Underlying our decision is the recognition that a nullity rule appears to punish the litigant rather than the offending attorney. This might be advisable, if we could legitimately assume that litigants are aware of the rules relating to the practice of law. Assuming such would be unreasonable." Id., 161 Ill.Dec. 194, 578 N.E.2d at 322.
We conclude that there are better suited mechanisms available to discourage the unlicensed practice of law. An attorney engaging in the unlicensed practice of law is subject to injunctive relief and indirect criminal contempt under Chapter 10 of the Rules Regulating the Florida Bar, which governs the investigation and prosecution of the unlicensed practice of law.[6] Additionally, an offending attorney would presumably be subject to disciplinary action in his or her home jurisdiction.[7] These mechanisms, unlike the nullity rule, appropriately focus on the misconduct of the offending attorney rather than unduly penalizing litigants with dismissal of their complaints.
Finally, the respondents argue that the petitioner is not entitled to relief under Szteinbaum because, as the trial court concluded, the petitioner has not established excusable neglect. While the trial court determined that the petitioner did not establish excusable neglect, the court does not appear to have considered the other factors weighed by the Szteinbaum court of prejudice to the opposing parties and the policy favoring resolution of cases on the merits. Nevertheless, although we agree with the Szteinbaum court's rejection of the nullity rule, we believe that the policy of allowing cases to be decided on *1046 the merits whenever possible and the protection of litigants from the dangers associated with the unlicensed practice of law are best served by a rule of law that allows amendment of these defective pleadings without requiring the establishment of excusable neglect. Accordingly, consistent with the liberal rules regarding the amendment of pleadings,[8] we conclude that a trial court must allow litigants a reasonable amount of time to amend their complaints with the appearance of authorized counsel. A dismissal should only be granted if the party fails to timely amend his or her pleading. Consistent with this approach, we quash Torrey and approve Szteinbaum to the extent consistent with this decision and remand for proceedings consistent therewith.
It is so ordered.
WELLS, C.J., and HARDING, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] The statute of limitations for medical malpractice actions is two years. See § 95.11(4)(b), Fla. Stat. (1999). However, the 90-day presuit period triggered by the filing of the notice of intent required under section 766.102(6) tolls the limitations period. Section 766.106(4), Florida Statutes (1999), provides:

(4) The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11. However, during the 90-day period, the statute of limitations is tolled as to all potential defendants.
Accordingly, in the instant case the petitioner's filing of a notice of intent on February 7, 1997, tolled the statute of limitations period so that it would have expired on or about January 5, 1998. See Hankey v. Yarian, 755 So.2d 93, 97 (Fla.2000) ("[W]e hold the two-year statute of limitations under section 95.11(4)(b) is suspended ("tolled") for ninety days under section 766.104(4)....").
[2] The Fifth District also cited Florida Rule of Judicial Administration 2.060(d) in support of the trial court's dismissal, which provides in pertinent part:

(d) Pleadings to be Signed. Every pleading and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in that attorney's individual name whose address, telephone number, including area code, and Florida Bar number shall be stated, and who shall be duly licensed to practice law in Florida or who shall have received permission to appear in the particular case as provided in subdivision (b).... The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served.
[3] Florida Rule of Civil Procedure 1.500(d) provides that a court may set aside a default in accordance with rule 1.540(b). Rule 1.540(b) provides in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....
(Emphasis added.)
[4] See Fla. R. Civ. P. 1.190(a) ("Leave of court [to amend] shall be given freely when justice so requires"); see also North Am. Speciality Ins. Co. v. Bergeron Land Dev., Inc., 745 So.2d 359, 362 (Fla. 4th DCA 1999) ("Florida Rule of Civil Procedure 1.190(a) provides that leave to amend shall be liberally granted. As a general rule, `[l]eave to amend should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile.'"); Odom v. Canal Ins. Co., 582 So.2d 1203, 1205 (Fla. 1st DCA 1991) ("A liberal construction of [rule 1.190(a)] is particularly appropriate in cases like this one where the proposed amendment would not change the basic issue in the case or materially vary the originally asserted grounds for relief.").
[5] In Fruin v. Northwestern Medical Faculty Foundation, Inc., 194 Ill.App.3d 1061, 141 Ill.Dec. 667, 551 N.E.2d 1010 (1990), the court affirmed the dismissal with prejudice of the plaintiff's medical malpractice complaint as a nullity where it was signed and filed by an attorney not licensed to practice in Illinois: "Generally, a pleading signed by a person not licensed to practice in Illinois is a nullity." Id., 141 Ill.Dec. 667, 551 N.E.2d at 1011.
[6] Rule 10-1.1 of the Rules Regulating the Florida Bar provides that this Court has "inherent jurisdiction to prohibit the unlicensed practice of law." Further, rule 10-2.1(b) defines a nonlawyer or nonattorney for purposes of chapter 10 to include "lawyers admitted in other jurisdictions." Finally, rules 10-7.1 and 10-7.2 allow for petitions to be filed seeking injunctive relief and indirect criminal contempt respectively. An offending attorney could also potentially be subject to criminal charges. See § 454.23, Fla. Stat. (1999).
[7] By way of illustration, in the instant case the Michigan attorney could be subject to discipline in his home state. See Mich. R. Prof. Cond. 5.5(a)("A lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."); Mich. State Bar R. 16 ("The State Bar of Michigan is hereby authorized and empowered to investigate matters pertaining to the unauthorized practice of law and, with the authority of its Board of Commissioners, to file and prosecute actions and proceedings with regard to such matters.").
[8] We note that allowing amendment of these pleadings does not run afoul of Florida Rule of Judicial Administration 2.060(d), which provides that "[i]f a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served." (Emphasis added.) As stated by the Third District in Szteinbaum:

Thus, neither the current Florida Rule of Judicial Administration 2.060(d), nor the Florida Rules of Civil Procedure in effect at the time of the Nicholson case mandate that complaints improperly filed by non-attorneys be stricken. The fact that the rules permit such errant pleadings to stand demonstrates that the holding of Nicholson that such an improper pleading should be stricken as a nullity necessarily is bottomed on the common law proscription against corporations representing themselves pro se rather than any governing rule or statute.
Szteinbaum, 476 So.2d at 249 n. 4.